**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **United States of America,** | Criminal No. 07-238 (PJS/JJG) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Daniel Steven Atchison,** | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

The above-entitled matter came before the undersigned Magistrate Judge on August 31, 2007 for the pretrial motions of defendant Daniel Atchison. Michelle E. Jones, Assistant United States Attorney, appeared on behalf of the Government. Andrea K. George, Assistant Federal Defender, appeared on behalf of Mr. Atchison (Atchison).

Through a motion to suppress statements (Doc. No. 21), Atchison argues that officers took a statement from him in violation of his privilege against self-incrimination. Atchison also has two other motions to suppress (Doc. Nos. 20, 24) but has not substantiated any concerns. These motions are referred to this Court for a report and recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(c).

**I.   BACKGROUND**

The events relevant to this motion occurred at Atchison's home on the morning of June 26, 2007, beginning as early as 7:30 a.m. Several officers, led by Special Agent Patrick Michaels of the Federal Bureau of Investigation, knocked at the door and announced that they had a search warrant. Atchison answered the door in his underwear. The officers placed

1

Atchison in handcuffs and moved him into a police van. Due to his state of dress, Atchison was cold and he shivered in the van.

Michaels joined Atchison in the van and read him a *Miranda* warning. The record does not indicate Atchison's exact response, but it is not disputed that Atchison said that he was invoking his Fifth Amendment rights, or words to that effect. Atchison did not specify, however, whether he was invoking his right to remain silent or his right to counsel. Michaels later testified he was confused about what rights Atchison meant to invoke.

Instead of asking Atchison to clarify his response, Michaels went on to state why the officers were there that day. Evidently without interruption from Atchison, Michaels said the officers had both a search warrant and an arrest warrant. He described some details about the investigation and indicated that Atchison would be detained. Michaels added that others might be prejudiced against Atchison because he was a violent felon, and then suggested that Atchison might want to give his own side of the story. Michaels next asked Atchison if he was having difficult times. Atchison said he was, and he may have tacitly admitted that he was involved in some bank robberies.

The record is not clear about the duration of the encounter in the van. Near the end of that encounter, Michaels asked Atchison to execute an advice of rights form, which included a full *Miranda* warning. Michaels testified that when he started to read the form, Atchison interrupted, said he knew his rights already, and signed the form. According to the time that Michaels wrote by their signatures on the form, it was executed around 8:15 a.m. From this notation, it is reasonable to infer that the encounter was between fifteen to thirty minutes long.

At some point during the encounter in the van, Michaels noticed that Atchison was shivering, so he provided more clothes. After Atchison executed the form, Michaels moved him

back to the house. Prior to renewing questioning, Michaels may have again mentioned his previous *Miranda* warning to Atchison. Michaels and another special agent went on to interview Atchison for about another hour.

## II.  ANALYSIS

### A.  Introduction

Atchison principally argues that, when he invoked his Fifth Amendment rights but Michaels persisted with questioning, his privilege against self-incrimination was violated. The Government counters that Atchison did not clearly invoke his rights, or in the alternative, that he waived his rights by submitting to further questioning.

As a threshold matter, the Fifth Amendment privilege against self-incrimination requires that a suspect, once taken into police custody, must receive a *Miranda* warning before being subject to interrogation. *United States v. Head*, 407 F.3d 925, 928 (8th Cir. 2005). The parties do not dispute that Atchison was in custody. They also do not contest that, at the beginning of the encounter in the van, Michaels gave Atchison a *Miranda* warning

### B.  Invocation

The first significant issue is whether Atchison invoked his rights. Before examining the invocation itself, it is useful to review the rights that are at stake. As the U.S. Supreme Court ruled in the seminal case of *Miranda v. Arizona*, the Fifth Amendment privilege against self-incrimination includes the right to remain silent in the face of police interrogation, and the right to have counsel present when interrogation takes place. 384 U.S. 436, 469-70 (1966).

Even though these rights are both derived from the same constitutional privilege, somewhat different standards have developed for determining whether there has been invocation of each right. For the right to remain silent, a court considers whether a suspect stated a "clear,

consistent expression of a desire to remain silent." *United States v. Johnson*, 56 F.3d 947, 955 (8th Cir. 1995) (quoting *United States v. Thompson*, 866 F.2d 268, 272 (8th Cir. 1989)). An indirect or equivocal statement is not enough to invoke the right. *United States v. Ferrer-Montoya*, 483 F.3d 565, 569 (8th Cir. 2007).

For the right to counsel, a court considers whether the suspect made a "clear and unequivocal request for the assistance of counsel." *United States v. Kelly*, 329 F.3d 624, 630 (8th Cir. 2003). The circumstances are viewed from the perspective of a reasonable officer, not the suspect. *Davis v. United States*, 512 U.S. 452, 458-59 (1994).

The parties have proposed analyses that examine each of the standards separately. But the standards are similar enough that, as a practical matter, they should be examined together. There is no logical reason to distinguish between the standards when both rights originate out of the privilege against self-incrimination.

The only variance is that, for the right to counsel, a court must view the circumstances from the perspective of a reasonable officer. The Eighth Circuit has yet to recognize a comparable rule in the context of the right to remain silent. The rationale for the rule, however, is that an officer must be able to decide when to cease questioning. The perspective of a reasonable officer, under the circumstances, supplies a workable guideline for evaluating the conduct of officers in the field. *See Davis*, 512 U.S. at 459. That reasoning is equally applicable when considering whether a suspect has invoked the right to remain silent.

The record shows that, after he was given a *Miranda* warning, Atchison invoked his "Fifth Amendment rights." Under the circumstances, it was evident Atchison was referring to the rights set out in the *Miranda* warning, including the right to remain silent and the right to counsel. Even though Atchison did not specify a particular right, it would be clear to a

reasonable officer under the circumstances that Atchison invoked his privilege against self-incrimination.

A contrary result would put form ahead of substance and ultimately defeat the purposes of the privilege against self-incrimination. There is hardly a simpler way for a layperson to express that privilege than by reference to the Fifth Amendment. An officer cannot disregard this implication because a suspect does not explain precisely what rights are at stake, especially when the officer just explained those rights in a *Miranda* warning. This Court concludes, therefore, that Atchison invoked his right to remain silent and his right to counsel.

### C.     Scrupulously Honor

Once the privilege against self-incrimination is invoked, the effect of the invocation depends on the ensuing conduct of the officers. If officers do not scrupulously honor the privilege, then the subsequent statements of the suspect are inadmissible and must be suppressed. This failure will also taint officers' subsequent efforts to obtain a waiver of the privilege from the suspect. *United States v. Astello*, 241 F.3d 965, 970 (8th Cir. 2001).

To scrupulously honor the privilege, the officer must cease interrogation. Before resuming interrogation or seeking a waiver of the privilege, the officer must allow a reasonable amount of time to pass and must supply another *Miranda* warning,[1] among other limitations. *See United States v. Cody*, 114 F.3d 772, 775 (8th Cir. 1997).

---

[1] The parties devote substantial argument to whether officers gave an adequate *Miranda* warning before they resumed interrogation. This Court ultimately concludes that questioning did not cease whatsoever, and even if it did, it did not cease for a reasonable amount of time. For this reason, this Court does not address the adequacy of any *Miranda* warnings that followed the first one here.

### 1. Interrogation

The initial question, in this context, is whether officers ceased interrogation after Atchison invoked the privilege. The Government asserts that, when Michaels spoke with Atchison after the invocation, Michaels was only discussing administrative matters incident to the execution of the warrants. Because the Government implies this discussion was not interrogation, this issue merits further analysis.

To determine whether officers' conduct amounts to interrogation, the standard is whether an officer either engaged in express questioning or its functional equivalent. This standard incorporates officers' words or actions, other than those normally incident to custody, that they know are likely to result in an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980).

This Court finds that, when Michaels continued talking to Atchison, his statements were not an ordinary part of the execution of a warrant. At that time, Michaels had no obligation to explain the basis for the warrants. Yet Michaels discussed the investigation, and then went on to suggest that it was in Atchison's best interest to make a statement.

This conduct was not express questioning, but Michaels had reason to know that this series of statements was likely to elicit an incriminating response, and so he was engaged in interrogation. This interrogation, moreover, proceeded without interruption after Atchison invoked the privilege. The record shows, therefore, that interrogation did not cease. For this reason, Atchison's privilege was not scrupulously honored and his ensuing statements must be suppressed.

Assuming strictly for the sake of argument that Michaels did not pursue interrogation for the entire time in the van, the record fails to show a reasonable amount of time passed before he

resumed questioning. Regardless of whether the encounter in the van was fifteen or thirty minutes long, Michaels remained there with Atchison the entire time. Atchison was in his underwear, shivering, and he remained in an atmosphere of police compulsion. Under the circumstances, a brief delay is not enough to scrupulously honor the privilege.

### 2. Waiver

The Government advances two arguments founded on waiver. One is that Atchison waived his rights by executing the advice of rights form. But as noted above, officers did not scrupulously honor the privilege. So their efforts to obtain this waiver were tainted. This waiver was ineffective and it does not cure the initial violation of the privilege.

The Government further argues that, when Michaels spoke to Atchison in the van, Atchison waived his rights by volunteering a statement. This argument is premised in part on its implication that Michaels was not engaged in interrogation there, which this Court previously rejected. But the Government also raises a separate issue that it is prudent to address here.

This issue is based on a major exception to the requirement that officers scrupulously honor an invocation of the privilege. Where a suspect invokes the privilege against self-incrimination, but then initiates voluntary conversation with officers, that conduct is a waiver of the privilege. This exception focuses on whether the suspect started talking without prompting from officers, amounting to a reversal of the previously expressed intention to remain silent. *United States v. Drapeau*, 414 F.3d 869, 873-74 (8th Cir. 2005); *United States v. Thompson*, 866 F.2d 268, 271 (8th Cir. 1989).

The Government suggests this exception applies to Atchison, asserting that he voluntarily started talking to Michaels in the van. This Court finds, however, that Atchison did not start talking spontaneously. He was responding to the ongoing commentary, which this Court

7

previously ruled was interrogation, by Michaels. For this reason, the statements by Atchison were not a waiver of his previous invocation, and these statements are appropriately suppressed.

### III. CONCLUSION

After Atchison received his first *Miranda* warning, he properly invoked his privilege against self-incrimination. Because officers did not cease interrogation, they did not scrupulously honor the privilege, and Atchison's ensuing statements are appropriately suppressed. The officers' failure to scrupulously honor the privilege also taints their efforts to obtain a waiver, and Atchison himself did not waive the privilege by voluntarily initiating conversation with officers. For this reasons, this Court concludes that Atchison's motion to suppress statements should be granted.

### IV. RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Atchison's motion to suppress statements (Doc. No. 21) be **GRANTED.**

2. Atchison's other motions to suppress (Doc. Nos. 20, 24) be **DENIED.**

Dated this 4th day of October, 2007.

                                             S/ Jeanne J. Graham
                                             JEANNE J. GRAHAM
                                             United States Magistrate Judge

### NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **October 24, 2007**. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. The district court judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.